**In re Subodh K. MEHRA, Debtor.**

**John V. LaBARGE, Movant,**

v.

**Subodh K. MEHRA, Respondent.**

**Bankruptcy No. 93–40232–293.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 25, 1994.

Norman W. Pressman, Robert E. Eggmann, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for debtor/respondent.

Deborah Benoit, Susman, Schermer, Rimel & Shifrin, St. Louis, MO, for trustee.

John V. LaBarge, Jr., St. Louis, MO, Trustee/movant.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Dr. Subodh K. Mehra, a 43–year old, self-employed physician, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 19, 1993. Dr. Mehra listed and described his "Interests in IRA, ERISA, KEOGH or Other Pension Or Profit–Sharing Plans" in Attachment No. B–11 to schedule of personal property he filed with the Court.

2. The Debtor later amended Attachment B–11 to list the following interests and descriptions:

| Name of Plan Provider | Type of Plan | Value of Plan |
| --- | --- | --- |
| North American Security Life (includes Roger Engemann Fund) | SEP/IRA* | $ 29,312.12 |
| Oppenheimer & Co. | SEP/IRA | $ 24,500.00 |
| Mony Life Ins. Co. | SEP/IRA | $ 12,665.34 |
| Northern Life | IRA | $ 40,345.62 |
| Northern Life | IRA | $ 4,428.79 |
| Kemper Investment | IRA | $ 3,488.35 |
| Templeton Fund | IRA | $ 2,855.32 |
| | | $117,595.54 |

* Simplified Employee Pension Plan/Investment Retirement Account

Attachment B–11 originally described the $40,345.62 Northern Life holds for Dr. Mehra as a Keogh account. The Debtor's amended B–11 Attachment describes that account as a SEP/IRA and the parties agreed, at a hearing on the Trustee's Objection, that all the accounts are IRA's and that none qualify as Keogh accounts.

3. Dr. Mehra claimed his interests in the various IRA and SEP plans were exempt from his creditors' claims. Following the trustee's objection to his claim of exemption, the Debtor amended his schedule of property claimed as exempt to reflect that he based his claims of exemption on Missouri Revised Statutes §§ 513.430(10)(e) and (f).[1]

4. The Court granted the Debtor a discharge of all his dischargeable debts on April 22, 1993.

5. The Trustee and the Debtor filed legal memoranda discussing the Trustee's objection to the Debtor's claim of exemption in the property listed on Attachment No. B–11. The Court held a hearing on the Trustee's objection on October 6, 1993.

## FACTUAL BACKGROUND

The parties do not dispute the facts in this case. Debtor holds interests in certain investments he maintains are exempt from his creditors' claims under Missouri Revised Statute § 513.430(10)(f). The parties agree that the funds at issue are individual retirement accounts (IRA's) established and qualified under sections 408(a) and (k) of the Internal Revenue Code (Title 26 U.S.C.). The Debtor's employer set up and funded three of the retirement accounts for him pursuant to 26 U.S.C. § 408(k). Such accounts are commonly known as simplified employee pension plans (SEP's). The Debtor established the other four accounts for his retirement and funded them without contributions from his employer. These four accounts comply with 26 U.S.C. § 408(a).

## DISCUSSION

The Trustee, through his attorney Ms. Benoit, raises three arguments in support of his stance that the interests Dr. Mehra listed in Attachment No. B–11, as amended, are property of the estate not subject to exemption. First, the Trustee maintains that the Debtor has not proven, as Missouri Revised Statute § 513.430(10)(f) requires, that the listed in-

terests are interests in "retirement plan[s] ... [that are] qualified under Section 408 of the Internal Revenue Code or that such accounts have been administered in compliance with the Internal Revenue Code." [Trustee's brief at 3]. Additionally, the Trustee argues that the Debtor has failed to prove that the IRA's are reasonably necessary for his support and so cannot utilize Missouri Revised Statute § 513.430(10)(e) to exempt his interests in the different plans from inclusion in his estate. The first half of this argument is moot given the parties' agreement at the October 6, 1993 hearing on this matter that the plans are IRA's established and qualified under 26 U.S.C. §§ 408(a) and (k).

Regarding the second half of this argument, the Debtor seeks to exempt his interests in his IRA's with section 513.-430(10)(f) of Missouri's Revised Statutes which, unlike the subsection immediately preceding it, does not contain a requirement that a plan be reasonably necessary for the Debtor's support. At the hearing on this matter it was suggested that the Court could imply an intent on the part of the Missouri legislature to require that the plans exempted from creditors' claims under section 513.-430(10)(f) be reasonably necessary for the Debtor's support. The Court will not read such a requirement into subsection (f) of the statute.

Second, Ms. Benoit, argues that the Debtor's IRA's and SEP's might be subject to ERISA. She argues that to the extent that ERISA applies to Dr. Mehra's IRA's and SEP's, it pre-empts his utilization of Missouri's exemption statute. Ms. Benoit maintains that this Court should not apply the Eighth Circuit's decision in *Checkett v. Vickers (In re Vickers)*, 954 F.2d 1426 (8th Cir. 1992) (holding that ERISA does not pre-empt one portion of Missouri's exemption statute applicable to retirement plans) to Dr. Mehra's case because the state amended that portion of the statute dealing with the exemption of retirement plans after the *Vickers* decision.

1. The Debtor argued, in his brief, that any Keogh plan he owned was exempt under Missouri Revised Statute § 513.430(10)(e). Counsel for Dr.

Mehra did not pursue this argument after conceding that none of the Debtor's holdings qualify as Keogh plans.

Specifically, Ms. Benoit argues that the *Vickers* court rested its decision on the fact that the Missouri exemption statute there at issue, Missouri Revised Statute § 513.-430(10)(e), mirrored the federal exemption for retirement plans included in the Bankruptcy Code. She maintains that *Vickers* does not apply to Dr. Mehra's case because the subsection of the Missouri exemption statute he seeks to use, 513.430(10)(f), has no counterpart among the federal exemptions included in § 522 of the Bankruptcy Code.

The *Vickers* court held "that ERISA does not preempt state law exemptions of pension plan benefits reasonably necessary for the support of a debtor." *Id.* at 1427. In so holding, the Court first noted that ERISA contains a savings clause stating that ERISA "shall not impair or supersede any other federal statute." *Id.* at 1429 (citing 29 U.S.C. § 1144(d)). The Court then recognized that Congress, in enacting the Bankruptcy Code had "specifically allow[ed] a debtor to exempt pension benefits to the extent necessary for support." *Id.* (citing 11 U.S.C. § 522(b)(2)(A)). Third, the Court noted that "the Missouri exemption provision is virtually identical to that found in the federal exemption scheme," *Id.* Having made these three observations, the Eighth Circuit concluded that "[i]t would be incongruous to hold pension benefits exempted under the federal bankruptcy law, but to strike down identical provisions enacted by the state under the express authorization of the bankruptcy code." *Id.*

While the *Vickers* court emphasized the fact that Missouri Revised Statute § 513.-430(10)(e) mirrored a subsection of the federal exemption statute, it is not clear that the Court would have held differently had the state statute not mirrored the federal enactment. In such a case, the Circuit Court could have upheld the state exemption using the reasoning that Congress, by specifically offering states the option of creating their own exemptions, in effect, had delegated its

authority to them and the exemptions created pursuant to that delegation qualified as federal law for purposes of applying ERISA's savings clause. *See In re Dyke*, 943 F.2d 1435 (5th Cir.1991) (Holding that to allow ERISA to pre-empt the Texas Property Code would thwart the Bankruptcy Code's "fresh start" policy and so contravene ERISA's statutory proscription that it not impair or modify other federal law) and *In re Shaker*, 137 B.R. 930, 942 (Bankr. D.Wisc.1992) (applying reasoning very similar to *In re Dyke* ). *Contra In re Weeks*, 106 B.R. 257, 263 (Bankr.E.D.Okla.1989) (Rejecting the notion that a state exemption statute could carry the force of federal law for ERISA preemption purposes). However, in light of the Supreme Court's *Patterson v. Shumate* decision, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), and our finding that state laws affecting IRA's established by individuals are not within ERISA's preemption, this Court does not have to speculate whether the Eighth Circuit would apply *Vickers* to uphold the broader subsection of the Missouri exemption statute.

▪ Dr. Mehra's three SEP/IRA's fall within ERISA's province which includes "any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry affecting commerce." 29 U.S.C. § 1003(a)(1) (Supp.1991). Section 1003(b) of Title 29 provides exceptions to the expansive language of section 1003(a) but none of those pulls Dr. Mehra's SEP/IRA's established under 26 U.S.C. § 408(k) out of ERISA's scope.

ERISA requires employers to include certain anti-alienation provisions in plans the statute governs.[2] Under *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), these anti-alienation provisions,[3] enforceable through ERISA, protect the Debtor's interest in these plans from inclusion in his bankruptcy estate via section 541(c)(2) of the Bankruptcy Code. Because

---

**2.** 29 U.S.C. § 1056(d)(1) mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

**3.** The documents provided to the Court do not include the anti-alienation provisions but, given the parties' stipulation that the plans meet the requirements of 26 U.S.C. § 408(k), the Court will assume that the plans comply with federal law and include such anti-alienation provisions.

these SEP's are not part of the Debtor's estate Dr. Mehra does not have to exempt them from his creditors' claims with section 513.430(10)(f) of Missouri's Revised Statutes and the issue of preemption and whether this Court should apply *Vickers* to subsection (f) never arises.

■ The IRA's Dr. Mehra established pursuant to section 408(a) of Title 26 are not governed by ERISA's preemption provision. Numerous courts have so concluded and this Court joins them. *See In re Shumaker*, 124 B.R. 820 (Bankr.D.Mont.1991), *Clark v. Kazi (In re Kazi)*, 125 B.R. 981 (Bankr.S.D.Ill. 1991), *In re Chadwick*, 113 B.R. 540 (Bankr. W.D.Mo.1990), *In re Locke*, 120 B.R. 563 (Bankr.D.Mont.1990), *In re Herrscher*, 121 B.R. 29 (Bankr.D.Az.1989), *In re Martin*, 102 B.R. 639 (Bankr.E.D.Tenn.1989).

The facts in the *Martin* case closely resembled those of the case at bar. There a debtor sought to exempt an IRA established and qualified under 26 U.S.C. § 408(a) from inclusion in her estate under a Tennessee statute that, like Missouri Revised Statute § 513.430(10)(f), had no counterpart among the exemptions Congress included in the Bankruptcy Code.[4] As in the case at bar, the trustee in the *Martin* case objected to the debtor's claim of exemption on dual grounds, one, that ERISA preempted the operation of the state exemption statute and, two, that the debtor's IRA did not qualify for exemption under the state exemption statute because it was not a "retirement plan." 102 B.R. at 641.

The *Martin* court's analysis included an overview of ERISA. *Id.* Judge Stair, author of the *Martin* opinion, explained that ERISA consists of two separate Titles, denoted Title I and Title II. 102 B.R. at 643 (n. 11). ERISA's first title "embodies the labor law provisions of ERISA governing, inter alia, reporting and disclosure, participation and vesting, funding, fiduciary re-

sponsibility, and administration and enforcement." *Id.* The second title "deals with amendments or additions to the Internal Revenue Code which impose requirements a plan must meet in order to provide the tax advantages and benefits of a qualified plan." *Id.* After distinguishing between ERISA's two titles, the Bankruptcy Court for the Eastern District of Tennessee noted that ERISA's preemption provision, 29 U.S.C. § 1144, refers only to portions of Title I, not Title II. *Id.*

The *Martin* court further explained that Congress enacted ERISA in response to abuses and mismanagement of employee benefit plans. *Id.* at 642–43. In passing ERISA, Congress sought "[to] require the disclosure and reporting to participants and beneficiaries of financial and other information with respect [to employee benefit plans], by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Id.* at 642 (quoting 29 U.S.C. § 1001).

Having reviewed ERISA's legislative history, the *Martin* court examined the legislative history behind 26 U.S.C. § 408(a). Judge Stair pointed to the House Report which stated that the bill sought to establish IRA's as a means of "mak[ing] available a special deduction for amounts set aside for retirement by employees who are not covered under a qualified plan ..." 102 B.R. at 643 (quoting House Rep. No. 807, 93rd Cong., 2d Sess., *reprinted at* 1974 U.S.Code Cong. & Admin.News at 4639, 4791), as evidence that in enacting 26 U.S.C. § 408(a) Congress intended "to provide comparable tax advantages to individuals not participating in an ERISA-qualified plan." *In re Martin*, 102 B.R. at 643. The different purposes behind ERISA's general provisions and 26 U.S.C. § 408(a) suggested to the *Martin*

---

4. Like Missouri, Tennessee, opted-out of the federal exemption scheme. 102 B.R. at 640. Section 26-2-104 of the Tennessee Code provided that "State pension moneys, certain retirement plan funds or assets, exempt.... (b) Except as provided in subsection (c), any funds or other assets payable to a participant or beneficiary from, or any interest of any participant or benefi-

ciary in, a retirement plan which is qualified under §§ 401(a), 403(a), 403(b), and [sic] 408 of the federal Internal Revenue Code of 1986, as amended, are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee ..." *Id.* (quoting Tenn. Ann.Code § 26-2-104 (Supp.1988)).

court that Congress differentiated between employee benefit plans and individually maintained IRA's. 102 B.R. at 642–43.

The *Martin* court also looked to 26 U.S.C. § 219 which, in its original form, "did not allow individuals participating in a qualified plan to deduct [from their taxable income] funds they might also [have] deposit[ed] into an IRA account" as further proof of the distinction Congress drew between IRA's established under section 408(a) of the Internal Revenue Code and the employee benefit plans governed by ERISA's first title. *Id.* at 643.

Judge Stair cited the implementing regulation that defines "employee pension benefit plan" and "employee pension plan" as additional authority for distinguishing an IRA established by an individual from an employee benefit plan within the scope of ERISA. *Id.* That regulation explicitly states that IRA's established under 26 U.S.C. § 408(a) are not to be considered "employee pension benefit plans" or "pension plans" as those terms are used in Title I of ERISA.[5]

The *Martin* court also noted a number of ways in which IRA's established by individuals under 26 U.S.C. § 408(a) differ from ERISA qualified plans. *Id.* at 644. Judge Stair recognized that "an IRA is contractual between the depositor and a depository while a plan's contract is between the employer and its employees." *Id.* He then pointed out that "IRA's are not required to contain the anti-alienation clause required under . . . (29 U.S.C. § 1056(d)(1) (West Supp.1989))."

*Id.* Thirdly, Judge Stair contrasted the great amount of control an individual has over the funds in an IRA with the limited degree of control he possesses over the funds his employer places in an ERISA qualified plan.

The language of ERISA's preemption provision, the legislature's purposes in enacting ERISA and 26 U.S.C. § 408(a), the language of the implementing regulation and the many differences the court perceived between IRA's and ERISA qualified plans convinced the *Martin* court that ERISA did not preempt the Tennessee statute that purported to exempt Mrs. Martin's IRA's from the claims of her creditors. 102 B.R. at 644. These same facts convince this Court that ERISA does not preempt Missouri Revised Statute 513.430(10)(f).

■ The Trustee asserts, as a third ground for his objection to the Debtor's claim of exemption, that Missouri Revised Statute § 513.430(10)(f) does not apply to Dr. Mehra's IRA's because that exemption only applies to "retirement plans." Ms. Benoit, on behalf of the Trustee, argues that the Debtor's IRA's are more properly considered "accounts" or "contracts" than "plans" because they were not created and sponsored by his employer. The *Martin* court supported its holding, in part, with a number of observations of how IRA's differ from ERISA qualified accounts. One such observation was that an IRA represents a contractual relationship between the IRA's beneficiary and a depository institution while the contract underlying an ERISA plan runs between an

---

**5.** The regulation states that:
(a) General. This section clarifies the limits of the statutorily defined terms "employee pension benefit plan" and "pension plan" for purposes of title I of [ERISA] . . . by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans for those purposes . . .

. . . . .

(d) Individual Retirement Accounts.
(1) For purposes of title I of [ERISA] . . . the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account described in section 408(a) of the [IRC] and an individual retirement bond described in section 409 of the [IRC] provided that—
(i) No contributions are made by the employer or employee organization;

(ii) Participation is completely voluntary for employees or members:
(iii) The sole investment of the employer or employee organization is without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through payroll deductions or dues checkoffs and to remit them to the sponsor; and
(iv) the employer or employee organization receives no consideration in the form of cash or otherwise, other than reasonable compensation for services actually rendered in connection with payroll deductions or dues checkoffs.
102 B.R. at 643–44. (quoting 29 C.F.R. § 2510.3–2(a) and (d) (revised as of July 1, 1987)).

employer and its employees. 102 B.R. at 644. This and other portions of the *Martin* court's opinion dealing with the preemption issue would seem to support the trustee's position that Dr. Mehra's IRA's do not fall within the scope of Missouri Revised Statute 513.430(10)(f) because they are accounts and not "retirement plans".

To again borrow the language of the *Martin* court, which faced this same argument, "[t]he trustee's position is untenable." *Id.* at 645. As that court noted, the state legislature's definition of "retirement plan" should not "be encumbered with definitions drawn from ERISA." *Id.*

The broad language the Missouri legislature employed in section 513.430(10)(f) convinces this Court that it intended to include within the exemption's scope, IRA's established under 26 U.S.C. § 408(a).[6]

An Order consistent with this Memorandum Opinion will be entered this date.

---

6. As one commentator stated:
   Importantly, the legislation [513.430(10)(f)] goes farther (sic) than the *Shumate* mandate and exempts money or assets payable to a participant in a plan qualified by § 401(k) (employer-employee deferred savings), § 403–(b) (deferred savings for teachers), § 408 (individual retirement accounts) or § 409 (employee stock ownership plans) of the Internal Revenue Code.
   *Pension Benefits In Bankruptcy: An Update by J. Kevin Checkett,* Journal of the Missouri Bar, Vol. 49, No. 3, p. 195 (May–June 1993).